UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSEPH DEMETRICE TAYLOR, an individual,

    Plaintiff,

v.

Case No. 2:21-cv-12469

JOHN JACKSON, in his individual
capacity as a Genesee Township
Police Officer,

    Defendant.

_____/

**Civil Rights Complaint and
Demand for Jury Trial**

Plaintiff Joseph D. Taylor ("Taylor") through counsel of record Attorney Nicholas P. Somberg pleads the following facts in support of his civil rights complaint against Genesee Township Police Officer John Jackson ("Jackson").

### I. Introduction

1. This case seeks to protect and vindicate fundamental constitutional rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution. Through the statutory vehicle 42 U.S.C. § 1983, Taylor pleads that on November 11, 2020, Genesee Township Police Officer John Jackson seized his person without probable cause, used excessive force during the initial seizure, and afterwards against him while handcuffed in retaliation for exercising the

1

constitutionally protected right to freedom of speech.

2. Taylor moves for a money judgment against Officer Jackson and a declaration that while acting under color of state law, the initial seizure without probable cause and the use of excessive force both during and after the unlawful seizure not only violates the Fourth Amendment but would chill others from exercising the First Amendment right to verbally voice disagreement with law enforcement officers.

## II. Jurisdiction and Venue

3. Plaintiff Taylor incorporates by reference complaint paragraphs one through two, as set forth fully here.

4. This Court has subject matter jurisdiction over the instant cause of action under 28 U.S.C. §§ 1331, 1343, 2201, 2202 and 42 U.S.C. §§ 1983, 1988.

5. Taylor's claims for declaratory and injunctive relief are further authorized by Federal Rules of Civil Procedure ("Fed. R Civ. P") 57 and 65, and by the general legal and inherent equitable powers of this Court. Title 42 U.S.C. §§ 1983 and 1988 authorize Plaintiff Taylor's claims for damages and fees.

6. Venue is proper under 28 U.S.C. § 1391(b) because Jackson resides, and a substantial part of the events or omissions giving rise to the claims occurred, in the district where this Court sits.

### III.  Parties

7. Plaintiff Taylor incorporates by reference complaint paragraphs one through six, as set forth fully here.

8. Taylor is a natural person that domiciles in the Township of Genesee, County of Genesee, and State of Michigan.

9. Defendant Jackson is a natural person believed to domicile in the County of Genesee and State of Michigan.

10. At the time of the acts or occurrences alleged in this complaint, Defendant Jackson was acting under color of state law as a uniformed police officer for the Township of Genesee, driving a marked police vehicle.

### IV.  Averment of Facts

11. Plaintiff Taylor incorporates by reference complaint paragraphs one through ten, as set forth fully here.

12. On November 11, 2020, Taylor had a heated discussion with the mother of his children, Erica L. Thomas ("Thomas"), over a family issue involving one of their minor children.

13. Taylor called 9-1-1 on his cellphone and requested the police when Thomas grabbed a knife and verbally threatened to have her boyfriend return with a firearm.

14. When Genesee Township Police—Officer Jackson, Officer Kenneth Chase ("Chase") and Sergeant Timothy Williams ("Williams")—arrived on scene, Jackson and Thomas were separated outside of the residence.[1]

15. Taylor was on the sidewalk by the front door of the apartment complex, while Thomas was more than thirty yards away, next to her vehicle in the parking lot.

16. Officer Jackson arrived on scene first, exiting his police car along the roadway directly in front of the apartment complex.

17. Chase arrived minutes later in the parking lot by Thomas.

18. Jackson, using vulgarities, yelled at Taylor to drop the gun.

19. There was no gun present, Taylor's cellphone was in his hand.

20. Jackson approached Taylor in a hostile, overly aggressive manner.

21. Jackson told Taylor he was going to jail.

22. Voicing disagreement with Jackson's overly aggressive demeanor and tone, Taylor asked what he was going to jail for, told Jackson that he was the person who called the police, told Jackson that Thomas was the one armed with a knife,

---

[1] A fourth yet unidentified police officer arrived on scene later, while Taylor was lying on the ground handcuffed.

4

told Jackson that Thomas hit him first, and that he had only defended himself.

23. Jackson slammed Taylor against the exterior wall of the apartment complex, threw his cellphone onto the ground, and handcuffed him behind the back.

24. Taylor then verbally opposed being slammed against the wall and being handcuffed for no reason.

25. In retaliation, Jackson lifted Taylor completely off the ground and body-slammed him onto part of the cement sidewalk in front of the residence, breaking his left arm and causing injury to his legs.

26. Taylor verbally opposed Jackson's unjustified use of force, said his arm was numb, and asked for an ambulance; Jackson commented "why can't we all just get along."

27. Jackson and other officers at the scene, lifted Taylor to his feet by pulling on the broken arm.

28. When Emergency Medical Services (E.M.S.) arrived, Jackson motioned Taylor to walk toward the gurney.

29. Taylor followed the instruction, still verbally expressing malcontent with being mistreated, which provoked Jackson to forcefully jerk backwards on the handcuffed, broken arm aggravating the injury to cause extreme pain.

30. Taylor then voiced displeasure with Jackson unnecessarily jerking on his

broken, handcuffed arm.

31. Jackson said that Taylor should not attempt to flee.

32. Jackson eventually removed the handcuffs, so that EMS could transport Taylor from the scene to Hurley Hospital for medical treatment of his broken arm.

33. At the hospital, Sergeant Williams instructed Jackson to release Taylor.

34. At the time of filing this civil rights complaint, Taylor had not been charged with any crime arising out of the November 11, 2020, incident.

35. Under the Michigan Freedom of Information Act ("F.O.I.A."), Taylor received the call log and sixteen audio files from Genesee County Central Dispatch.  **(Ex. 1–Dispatch Call Log; Ex. 2–Dispatch Audio Files.)**

36. On September 20, 2021, counsel for Taylor filed an FOIA request with Genesee Township for the police report and any other public records, i.e., crime scene photos, audio/video files, interviews.

37. On September 28, 2021, Lieutenant Robert S. Watters responded that the case was still under review by Genesee County Assistant Prosecutor Mark Zelley, pending the issuance of an arrest warrant for Taylor.

38. Genesee Township Police never retrieved the knife that Thomas possessed inside of the residence but did take pictures at the scene, including photographs of Taylor's legs after he verbally denied consent.

39. Taylor never posed a flight risk, was never an immediate threat to officers or others at the scene and did not resist in any way.

40. Taylor wore sweatpants and flipflop shoes at the time of the incident; he lives on a dead-end street, had no access to a vehicle, and has permanent screws in his foot making it difficult to walk.

## V. Claims

*Count One—First Amendment Retaliation*
[Freedom of Speech]

41. Plaintiff Taylor incorporates by reference complaint paragraphs one through forty, as set forth fully here.

42. Jackson acted under color of state law using excessive force against Taylor in retaliation for his unflattering speech.

43. Taylor's choice of words, regardless of the underlying message carried, are a form of speech entitled to First Amendment protection.

44. Taylor had a clearly established constitutional right of which a reasonable person would have known, to verbally express disagreement with the actions of police and the specific message delivered by that speech.

45. Jackson took adverse action against Taylor by using excessive force during the initial seizure and after handcuffing for exercising the protected right.

7

46. Jackson's motive for physically injuring Taylor was punishment for exercising rights secured under the Constitution.

47. The adverse action taken against Taylor by Jackson would substantially interfere with the exercise of First Amendment freedoms by deterring a person of ordinary firmness from verbally voicing displeasure with police action.

48. At the time of the occurrence, the contours of the First Amendment were sufficiently clear that a reasonable person in the shoes of Jackson would understand that what he was doing to Taylor violated the protected right.

49. As a direct and proximate result of Jackson's retaliatory animus Taylor suffered irreparable harm, including the prospective loss of constitutionally protected free speech resulting from the use of excessive force—chilling others from further exercise of the right—entitling him to declaratory and injunctive relief and damages.

*Count Two—Fourth Amendment*
[Unlawful Detention and Seizure]

50. Plaintiff Taylor incorporates by reference complaint paragraphs one through forty-nine, as set forth fully here.

51. Jackson interfered with Taylor's fundamental liberty interests by detaining, seizing, and arresting him without probable cause to believe he committed a crime.

52. Jackson's pretrial detention and seizure of Taylor while acting under color of state law violated the Fourth Amendment—applicable to the states through the Fourteenth Amendment—right to freedom of movement without unlawful government interference or restraint.

53. Taylor was seized within the meaning of the Fourth Amendment because a reasonable person in his shoes would not have felt free to leave when physically restrained in handcuffs behind the back, slammed onto the ground, and escorted by a host of armed uniformed police officers that maintained a hold on the handcuffs.

54. At the time of the occurrence in controversy, Fourth Amendment rights were sufficiently clear that a reasonable person in Jackson's shoes would know that the detention and seizure of Taylor's person without probable cause was unconstitutional arbitrary and oppressive conduct.

55. Jackson's continuing detention and seizure of Taylor without probable cause, resulted in further confinement without constitutionally adequate justification under the Fourth Amendment.

56. As a direct and proximate result of Jackson's unlawful detention and seizure, Taylor suffered serious physical injury and irreparable harm—including the temporary loss of fundamental liberty interests—entitling him to declaratory and injunctive relief and monetary damages.

### *Count Three—Fourth Amendment*
### [Excessive Force]

57. Plaintiff Taylor incorporates by reference complaint paragraphs one through fifty-six, as set forth fully here.

58. At the time of the detention, seizure, and arrest, Taylor had a clearly established right to be free from Jackson using excessive force against him while he was handcuffed.

59. Considering the severity of the crime under which the arrest was made—a misdemeanor crime at most—, an objectively reasonable officer in the shoes of Jackson would understand that constitutional guarantees prohibit the use of excessive force against a handcuffed person that is not resisting or attempting to flee or a danger to others at the scene.

60. As a direct and proximate result of Jackson using excessive force against a handcuffed person, Taylor suffered serious physical injury and irreparable harm—including a broken arm, scraped legs, and the temporary loss of fundamental liberty interests—entitling him to declaratory and injunctive relief and monetary damages.

### *Count Four—False Arrest*
### [Federal Common Law]

61. Plaintiff Taylor incorporates by reference complaint paragraphs one through

sixty, as set forth fully here.

62. Jackson lacked probable cause for the arrest because in his mind, the facts and circumstances would not be sufficient to warrant a prudent person believing Taylor had committed or was about to commit a crime.

63. Jackson further failed to act in good faith and lacked probable cause for the initial seizure within the meaning of the Fourth Amendment because an objectively reasonable person in his shoes would understand that criminally prosecuting Taylor, who did not have the knife, for at most mutual combat, would violate the right.

64. An objectively reasonable person in the shoes of Jackson would have known they were contravening a clearly established right by arresting Taylor without probable cause that he committed a crime.

65. As a direct and proximate result of Jackson's unlawful detention and seizure, Taylor suffered serious physical injury and irreparable harm—including the temporary loss of fundamental liberty interests—entitling him to declaratory and injunctive relief and monetary damages.

### VI.  Prayer for Relief

Wherefore, Plaintiff Taylor asks this Court,

A) to declare that Defendant Jackson violated his fundamental

constitutional rights as pled in the complaint,

B) to issue him an award of actual, compensatory, exemplary, and punitive damages against Defendant Jackson,

C) to award him prejudgment interest, postjudgment interest, reasonable attorney fees, costs, and expenses under 42 U.S.C. § 1988 and other applicable law,

D) to grant him such other and further relief, including injunctive, that this Court finds just and proper under the circumstances.

Respectfully submitted,

  /s/ Nicholas Somberg
Nicholas Somberg (P80416)
Counsel for Plaintiff Jackson
31700 Telegraph Road, Ste 210
Bingham Farms, MI 48025
P: (248) 270-5979
Dated: October 20, 2021    F: (248) 590-0166
nick@somberglaw.com

## Jury Trial Demand

Under the Seventh Amendment to the United States Constitution and Federal Rule of Civil Procedure 38, Plaintiff Taylor requests a jury trial on all issues so triable by right.

Respectfully submitted,

  /s/ Nicholas Somberg
Nicholas Somberg (P80416)
Counsel for Plaintiff Jackson
31700 Telegraph Road, Ste 210

Dated: October 20, 2021

Bingham Farms, MI 48025
P: (248) 270-5979
F: (248) 590-0166
nick@somberglaw.com